# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00819-CV

**Violet Quint, Individually and as Representative for the Estate of Donald Quint, Debbie Farley, Donna Cubbison and Carrie Jiunta, Appellants**

**v.**

**Eugene Alexander, M.D., Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-04-0415-C, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case, we address whether the district court abused its discretion in dismissing appellants' medical malpractice, survivorship, and wrongful death claims. In one issue, Violet Quint, individually and as representative of the estate of her husband, Donald Quint,[1] claims that the district court erred in dismissing her claim for failure to properly serve the required expert report upon appellee, Dr. Eugene Alexander, or his counsel; she filed the report with the district clerk instead. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2005) (health care liability "claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports . . . ."). Because Quint did not timely serve the

---

[1] We will refer to appellants collectively as "Quint," and to Violet Quint's husband as "Donald."

expert report, we hold that dismissal was proper. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

Dr. Alexander injected Quint's husband, Donald, with a steroid. Two days later, after suffering what Quint describes as "total torment," Donald committed suicide. Quint claims that Dr. Alexander knew or should have known that the injection would cause Donald to suffer a serious allergic reaction because Donald's patient information sheet indicated that he had suffered a serious allergic reaction to a steroid injection in the past.

Shortly before the statute of limitations expired, Quint filed suit against Dr. Alexander. She hired Dr. Alan S. Boyd to prepare a written report reviewing Dr. Alexander's care of Donald to support her claim. The statutory period in which to serve the report upon Dr. Alexander or his counsel expired on July 20, 2004, 120 days after the filing of the original petition. Quint did not serve Dr. Alexander or his counsel with Dr. Boyd's report until after that deadline. Although a copy of Dr. Boyd's report was mailed to the district clerk before the 120th day and then filed with the district clerk on the 120th day, the district court dismissed the case with prejudice because the report was not served in accordance with section 74.351(a). The court also awarded to Dr. Alexander attorney's fees in the amount of $3,054.50. This appeal followed.

## STANDARD OF REVIEW

The civil practice and remedies code provides that, for failure to serve the party or his attorney within the 120-day period, the court:

*shall* . . . enter an order that: (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and (2) dismisses the claim with respect to the physician or health care provider with prejudice to the refiling of the claim.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (emphasis added).  A district judge must dismiss the case and award attorney's fees when a claimant fails to comply with the statutory service requirement.  *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001) (construing obligation to dismiss and award attorney's fees as mandatory under precursor to section 74.351 when so requested by defendant doctor).

We review the dismissal of health care liability claims for failure to comply with the statutory deadline for service of expert reports under an abuse of discretion standard.  *Id*. at 878 (applying abuse of discretion standard to dismissal under former section 74.351).[2]  A district court's failure to analyze or apply the law correctly constitutes an abuse of discretion.  *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

## DISCUSSION

Quint did not serve a copy of her expert report upon Dr. Alexander or his lawyer before the 120-day deadline.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)*.*  Consequently,

---

[2] We note that some commentators have raised the question of whether abuse of discretion remains the appropriate standard of review after the legislature amended section 74.351(a).  *See* George C. Hanks, Jr. & Rachel Polinger-Hyman, *Redefining the Battlefield:  Expert Reports in Medical Malpractice Litigation After HB 4*, 67 Tex. Bar J. 936, 943 (2004).  However, because both parties agree that abuse of discretion is the appropriate standard, and absent guidance from the supreme court to the contrary, we employ the abuse of discretion standard.

the district court dismissed her claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). Nevertheless, Quint insists that she satisfied the spirit of section 74.351(a) by filing the report with the district clerk instead of serving it upon Dr. Alexander or his lawyer. She further contends that service upon Dr. Alexander was impermissible because it would violate rules of professional responsibility and that service upon Dr. Alexander's lawyer was impossible because she did not know the lawyer's name or address. As a result, she claims that she had no other choice but to file the report with the district clerk. Quint also claims that, even if filing the expert report with the court was insufficient to satisfy section 74.351(a)'s service requirement, the district court erred in dismissing her case because: (a) her "self-abatement" of the underlying litigation tolled the 120-day service deadline; and (b) Dr. Alexander waived any objections to the sufficiency of the report by participating in discovery proceedings.

Quint first argues that filing the report with the district clerk is tantamount to serving the report upon Dr. Alexander or his lawyer. Section 74.351(a) provides, "In a health care liability claim, a claimant *shall . . . serve on each party or the party's attorney* one or more expert reports . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphasis added).

To determine whether the filing of the report with the district court is equivalent to serving the report upon Dr. Alexander or his counsel, we construe the statute in light of the legislature's intent. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). Where the language of the statute is unambiguous, we adopt the interpretation supported by the plain language. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

4

We will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute. *McIntyre*, 109 S.W.3d at 745.

The plain language of section 74.351(a) expressly requires the claimant to "serve" the report upon the defendant health care provider or his attorney. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Section 74.351(a) does not define the word "serve," but the definitional section of the statute provides, "Any legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(b) (West 2005).

Health care liability claims are civil actions. The rules of civil procedure govern "*all* actions of a civil nature," unless a specific exception applies. *See* Tex. R. Civ. P. 2 (emphasis added). Accordingly, we conclude that the legislature intended the term "serve" to have the same meaning that it carries in the rules of civil procedure.

Civil procedure rule 21a prescribes four methods by which a party may serve another: (1) delivery in person, by agent, or by courier-receipted delivery; (2) certified or registered mail; (3) telephonic document transfer; or (4) such other manner as the court in its discretion may direct. Tex. R. Civ. P. 21a. At no time before the expiration of the 120-day period did Quint serve the expert report upon Dr. Alexander or his counsel as required by Rule 21a.

Quint maintains, however, that she was prohibited by the rules of professional conduct from serving the expert report on Dr. Alexander when she knew he was represented by a lawyer. *See* Tex. Disciplinary R. Prof'l Conduct 4.02(a), *reprinted in* Tex. Gov't Code Ann., tit. 2,

5

subit. G app. A (West 2005). Rule 4.02(a) of the Texas Disciplinary Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer *or is authorized by law to do so.*

*Id.* (emphasis added). Because section 74.351(a) expressly authorizes service of the expert report upon the opposing party, we reject Quint's claim that she was unable to serve Dr. Alexander without violating her ethical obligations.

Quint also contends that she was unable to serve Dr. Alexander's lawyer with the expert report. Quint claims that, even though she knew Dr. Alexander had a lawyer, she did not know the lawyer's name or address. It is clear from the record, however, that this information was available before the expiration of the 120-day service deadline.[3] But even if it had not been, Quint could have served Dr. Alexander personally, as the statute authorized. We therefore hold that Quint's filing of the report with the district clerk did not satisfy section 74.351(a)'s service requirement.

---

[3] Quint filed an original petition with the district court on March 22, 2004, but did not serve it upon opposing counsel. On June 23, 2004, she filed a first amended original petition with the district court, and Dr. Alexander was served with a copy on June 28, 2004. Dr. Alexander filed and served by certified mail special exceptions and an original answer on July 19, 2004, the 119th day after the filing of the original petition.

Alternatively, Quint argues that she complied with Section 74.351(a)'s service requirement because, by "self-abating" the case, she extended the deadline for filing the expert report, as provided by statute:

> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made *at least 60 days before the filing of a suit* in any court of this state based upon a health care liability claim.

Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a) (West 2005) (emphasis added). In addition, notice "given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties." *Id*. § 74.051(c).

Quint did not comply with the requirement to provide at least 60 days of advance notice of intent to file the suit. Instead, she filed the original petition only five days after filing the notice of intent to file suit. The result of filing the original petition before the expiration of the 60-day pre-suit notice period was that Quint lost the benefit of the tolling period provided by section 74.051(c).

Despite her failure to comply with the pre-suit notice requirement, Quint claims that she timely served the expert report upon Dr. Alexander on July 27, 2004, because she "self-abated" the case. Quint contends that, by voluntarily waiting 60 days before amending the original petition to add discovery, to serve Dr. Alexander, or to take any other action, she therefore complied with

7

"the law's purpose of providing opportunity for settlement and discussions about the case" during this post-filing and pre-service period. She claims that the district court erred in determining that the 120-day window in which to serve the expert report commenced on March 22, 2004, the date of filing of the original petition. Quint insists instead that the 120-day window for service actually commenced on May 21, 2004, at the end of her 60-day period of voluntary delay. It is Quint's position that the deadline for serving the report upon Dr. Alexander did not expire until September 20, 2004, a full 180 days after the filing of the original petition. We disagree.

The plain language of section 74.351(a) requires service of the expert report to be made "not later than the 120th day after the date the claim was filed." *Id*. § 74.351(a). The fact that Quint filed the claim before the expiration of the 60-day pre-suit notice period in no way changes the requirement that she serve the expert report by the 120th day after filing the original petition.

Dr. Alexander never requested, and the court never entered, an order of abatement in this case. Although the defendant in a health care liability claim may request the abatement of a case when the plaintiff fails to give the required 60 days pre-suit notice of intent to file a claim, we are unaware of any authority that allows a plaintiff to abate a case without judicial permission in order to extend the statutory service deadline. *See Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex. 1983) (recognizing that defendant may move for period of abatement when plaintiff does not comply with pre-suit notice requirement). Accordingly, the deadline for service of the expert report began to run from the day Quint filed the original petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). For these reasons, we reject Quint's position that her voluntary delay extended the time for filing the expert report.

8

Quint also claims that, by engaging in discovery when it was stayed, Dr. Alexander failed to object to the adequacy of the service of the expert report and therefore waived his right to seek dismissal. Section 74.351(s) stays discovery proceedings in a health care liability claim until the expert report is properly served. *Id*. § 74.351(s). Quint contends that, in light of this statute, the mere fact that Dr. Alexander submitted discovery requests to Quint is proof that he was properly served with the expert report. As a consequence, she urges, Dr. Alexander waived his right to seek dismissal.

The supreme court addressed a similar question in *Jernigan v. Langley*, 111 S.W.3d 153 (Tex. 2003). In that medical malpractice case, the defendant doctor participated in discovery after receiving the report but did not object to its adequacy until more than 600 days after receiving it. *Id.* at 157. The court determined that Dr. Jernigan's participation in the discovery proceedings was "not so inconsistent with an intent to assert the right to dismissal under [the precursor to section 74.351] as to amount to waiver of the right." *Id*. at 157-58. The court found that "[a]ttempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal. . . ." *Id*. at 157. Given that the defendant doctor's inaction did not demonstrate "an intent to yield the right to dismissal based on the report's insufficiency," the court held that he did not lose that right. *Id*. We are persuaded by the logic in *Jernigan* and therefore find that Dr. Alexander did not waive his right to seek dismissal by participating in discovery.

In any case, Quint's position fails to consider that section 74.351(b) *requires* the district court to dismiss the claim with prejudice for failure to serve the expert report in a timely

9

manner. *See American Transitional Care Ctrs. of Tex., Inc.*, 46 S.W.3d at 877 (construing obligation to dismiss under precursor to section 74.351(b)). In light of this constraint and the supreme court's holding in *Jernigan*, we overrule Quint's argument that Dr. Alexander's participation in discovery constituted a waiver that precluded dismissal of the claim.

## CONCLUSION

Because the district court did not abuse its discretion in determining that Quint failed to comply with the requirement to serve a copy of the expert report upon Dr. Alexander or his lawyer as required by section 74.351(a), we affirm the judgment of the district court in dismissing Quint's claims.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   October 28, 2005

10